1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8
9
10

DEANNE MARIE SHERRER B.,

11

Plaintiff,

12

v.

13

COMMISSIONER OF SOCIAL
SECURITY,

14

Defendant.

15

CASE NO. 2:22-CV-1812-DWC

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION DENYING BENEFITS

16      Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of the denial

17  of her application for disability insurance benefits (DIB). Pursuant to 28 U.S.C. § 636(c), Fed. R.

18  Civ. P. 73 and Local Rule MJR 13, the parties have consented to proceed before the undersigned.

19  After considering the record the Court concludes that this matter must be reversed and remanded

20  pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this

21  Order.

22
23
24

# I. BACKGROUND

Plaintiff filed an application for DIB on October 31, 2019 alleging disability beginning December 31, 2016, which she later amended to November 21, 2017. Administrative Record (AR) 17, 19, 35, 195-201. After her application was denied initially and upon reconsideration, she filed a written request for a hearing, which was held before an Administrative Law Judge (ALJ) on December 16, 2021 at which Plaintiff was represented and testified. AR 31-59. The ALJ issued a written decision denying Plaintiff's claim on January 24, 2022. AR 17-30. The Appeals Council declined Plaintiff's request for review, making the ALJ's decision final. AR 1-6.

# II. THE ALJ'S FINDINGS

The ALJ found Plaintiff has the severe impairments of: degenerative disc disease of the lumbar spine status post-surgery and morbid obesity (20 CFR § 404.1520(c)). AR 19.

The ALJ found the combination of Plaintiff's impairments do not meet or equal any Listed Impairment. AR 21.

The ALJ determined that Plaintiff has the residual functional capacity (RFC) to perform medium work as defined in 20 CFR § 404.1567(c) except:

> she must avoid frequent climbing of ramps or stairs; she is limited to occasional climbing of ladders, ropes, or scaffolds; she is limited to frequent stooping; she must avoid concentrated exposure to nonweather related extreme cold, excessive vibration, unprotected heights, and hazardous machinery.

AR 21.

The ALJ found that a person of Plaintiff's age, with her education, work experience, and RFC, could still perform her past relevant work as a Property Manager. AR 25-26.

# III. STANDARD

Pursuant to 42 U.S.C. § 405(g) this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). However, the Commissioner's decision must be affirmed if it is supported by substantial evidence and free of harmful legal error. 42 U.S.C. § 405(g); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

Substantial evidence "is a highly deferential standard of review." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). The Supreme Court describes it as "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotations omitted).

# IV. DISCUSSION

## A. Plaintiff's Testimony

Plaintiff argues the ALJ improperly rejected her testimony.

### 1. The ALJ's Findings

The ALJ discredited Plaintiff's testimony, finding her "complaints are out of proportion to the objective medical evidence". AR 22. The ALJ then listed two pages of bullet-pointed reasons to support this finding:

- Treatment notes [following her December 2019 L4-L5 minimally invasive laminectomy] show the **claimant was doing well**. For instance, in January 2020, the claimant reported that her **preoperative pain improved**. She mostly complained of discomfort in her bilateral buttock and hips with occasional radiation into her thighs. She was walking for 5-minute increments. Yet, **she requested a prescription for Norco because she was leaving the following day for a vacation to Mexico.** On

exam, she had a **normal gait and station**. She had **full strength of the lower extremities bilaterally**.

- Similarly, in February 2020, Kevin Herron, MD noted the **claimant seemed to doing much better as she is starting physical therapy**. She was pleased with the outcome. **She requested to have refill of pain medication**, which she said she used very sparingly (Exhibit 8F/14). That same month she reported **she lost weight from 240 pounds to 213. She was also trying to get more exercise** (Exhibit 8F/8).

- By March 2020, the **claimant reported substantial relief of her preoperative pain**. She **described her condition as "much improved."** She was **doing physical therapy**. She **lost weight**. On exam, she had **normal sensation of the spine and full strength**. Dr. Herron noted she responded very well to L4-5 decompression. He **advised her to continue physical therapy and focus on weight loss as well as core strengthening**. He noted that she may need fusion in the future (Exhibit 9F/5-7).

- Physical therapy treatment notes show **variable improvement in symptoms**. For instance, in January 2020, the **claimant reported she went on a recent cruise to warm weather with improved pain**. She returned **to cold weather with increased pain and stiffness** (Exhibit 15F/53). In May 2020, she reported her **back was better**. She **endorsed soreness with hips and buttocks** (Exhibit 15F/35). Physical therapy notes references reports of progressive knee pain (e.g. Exhibit 15F/29-32). However, there is no imaging or treatment notes to confirm a knee-related diagnosis.

- In August 2020, the claimant reported she felt **she definitely felt she was more active** than she had been in the past. She was **doing some walking outside as well as on a treadmill**. She was also **swimming** (Exhibit 16F/54-55).

- In September 2020, she reported that **she traveled to Arizona for a couple of weeks** (Exhibit 15F/26). That same month she reported that **she went camping and aggravated her lower back pain** (Exhibit 15F/24).

- However, the following month, Dr. Herron noted that the **claimant had been doing well with only slight pain increase recently with the change in season** (Exhibit 16F/46). Similarly, in December 2020, Dr. Herron noted the claimant's back surgery helped considerably but **at times she still had moderate to severe pain in her back during which she sparingly used her prescription Norco**. She denied any side effects from her pain medication. She **requested a refill** (Exhibit 16F/33).

- The claimant did not present until April 2021 to **request refills of Hydrocodone** and vitamin D because she was **leaving for Arizona that week** to pick of her daughter and bring her back for the summer (16F/27).

- She had relatively **benign exam findings on consultative evaluation in May 2021 including normal gait and station, full strength of the upper and lower extremities, and intact sensation**. She was in no distress. She weighed 219 pounds. She **presented**

**with a cane but had no difficulty ambulating or participating in the exam without an assistive device**. She also had no difficulty dressing undressing, getting up and down form a chair, or off and on the exam table. She had no problems standing on one leg, walking on the forefoot, heels, in tandem, hopping, squatting or bending. She demonstrated normal functioning of the upper extremities bilaterally (Exhibit 13F). Despite testimony of hip and upper extremity pain, the claimant had negative x-rays of hip and hand (Exhibit 13F/4-5).

- In August 2021, the claimant reported **she was babysitting her granddaughter all week**. She complained of cold-like symptoms but **denied any body aches** (Exhibit 16F/180-181).

- However, in September 2021, the claimant reported continued difficulty with **activities of daily living with increase in pain** emptying the dishwasher, standing to brush teeth, she was reportedly **unable to walk through grocery stores** secondary [sic] and **used a mobility scooter in the community** (Exhibit 15F/2).

AR 22-24 (emphasis added).

2.   <u>Testimonial Evidence Standard</u>

"The ALJ conducts a two-step analysis to assess subjective testimony where, under step one, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of symptom." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation and internal quotation marks omitted). "If the claimant meets this threshold and there is no affirmative evidence of malingering, the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Id*.

When assessing a claimant's credibility the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ may also consider if a claimant's complaints are "inconsistent with clinical observations[.]" *Regennitter v. Commissioner of Social Sec. Admin*., 166 F.3d 1294, 1297 (9th Cir. 1998).

1    However, affirmative evidence of symptom magnification, or malingering, relieves an

2    ALJ from the burden of providing specific, clear, and convincing reasons for discounting a

3    claimant's testimony. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006); *Morgan v. Comm'r*

4    *of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Berry v. Astrue*, 622 F.3d 1228, 1235

5    (9th Cir. 2010) (upholding finding where ALJ "pointed to affirmative evidence of malingering").

6    Questions of credibility are solely within the control of the ALJ. *Sample v. Schweiker*,

7    694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility

8    determination. *Allen v. Heckler*, 749 F.2d 577, 580 (9th Cir. 1984). In addition, the Court may

9    not reverse a credibility determination where that determination is based on contradictory or

10   ambiguous evidence. *Id*. at 579.

11   3.  Analysis

12   Plaintiff argues the ALJ only gave one reason to reject her testimony—lack of objective

13   medical evidence—which is "legally insufficient and not supported by substantial evidence."

14   Dkt. 12 at 4. In addition, Plaintiff insists the ALJ failed to address her alleged functional

15   limitations between November 21, 2017 (her amended alleged onset of disability) and her

16   December 2019 back surgery—a period of almost two years—much less provide clear and

17   convincing reasons for rejecting her testimony about how her severe impairments impacted her

18   during that period. *Id*. at 5.

19   Defendant responds that the ALJ reasonably showed the objective evidence, including

20   post-surgical improvement and Plaintiff's activities, undermined her claim of debilitation. Dkt.

21   15 at 3. According to Defendant, "the ALJ pointed to evidence in a chronological order showing

22   that Plaintiff experienced an immediate improvement, which continued throughout 2020 and

23   through 2021, where she even began to become more active." Dkt. 15 at 4-5 (citing 591-93, 599,

24   833-834). In addition, Defendant argues the ALJ cited numerous examples of post-surgical

1  activities Plaintiff admitted to engaging in that "cast significant doubt over claims of
2  debilitation". *Id*. at 5 (citing AR 621, 623, 707-708).

3       In her reply Plaintiff correctly states that Defendant failed to rebut the argument that the
4  ALJ "focused on evidence after Plaintiff's surgery in December 2019 without considering the
5  duration of Plaintiff's limitations before surgery", and even if the Court were to find that the ALJ
6  correctly concluded Plaintiff "eventually underwent sustained improvement" following her
7  December 2019 surgery, "she would still be entitled to an award of benefits for a closed period
8  leading up to the surgery". Dkt. 16 at 2. Plaintiff further insists that the ALJ focused on
9  "improvement in the immediate aftermath of her surgery without meaningfully addressing the
10 return of Plaintiff's back pain and reduced functioning through 2021." Dkt. 16 at 2.

11      The Court concurs with Defendant that the ALJ provided clear and convincing reasons
12 supported by substantial evidence to reject Plaintiff's testimony regarding her alleged limitations
13 following her December 2019 surgery by pointing to her ability to engage in a range of physical
14 activities such as walking and swimming (AR 566-567, 707-708), relatively frequent travel,
15 including international (AR 623, 707), camping (AR 621), and babysitting her granddaughter for
16 a week (AR 833).

17      Nevertheless, the Court also finds Plaintiff is correct that the ALJ failed to address her
18 testimony regarding her limitations prior to the December 2019 surgery. The ALJ noted that
19 following an August 2017 MRI of Plaintiff's lumbar spine doctors diagnosed her as a good
20 candidate for decompression surgery at L5. AR 22-23, 413. However, at her hearing before the
21 ALJ Plaintiff testified that she did not undergo this procedure until December 2019 because she
22 was not comfortable with the initial surgeons she met. AR 46-47. During the two-plus-year
23 period between referral for L5 decompression surgery and actually undergoing the surgery
24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION DENYING BENEFITS
- 7

(August 2017 and December 2019) the medical evidence indicates Plaintiff experienced gradual worsening of her back pain for which she tried chiropractic manipulation, massage, and physical therapy with no improvement, and reported only a "mild" benefit from the prescription pain medication Norco. AR 409-411, 413, 424, 427, 459-462, 470, 487, 496. In light of this evidence, the ALJ was required to address Plaintiff's testimony as it related to this period of time. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008)("If the claimant [produced objective medical evidence of an underlying impairment] and there is no affirmative evidence of malingering, the ALJ can reject the claimant's testimony about the severity of [her] symptoms only by offering specific, clear and convincing reasons for doing so."). Accordingly, the Court finds the ALJ erred by failing to address Plaintiff's testimony about the severity of her symptoms during the period of November 2017 (her amended onset date) to December 2019, resulting in reversable error. On remand the ALJ must reevaluate Plaintiff's testimony as it relates to her limitations prior to her December 2019 back surgery.

**B.  Lay Witness Testimony**

   1.  <u>The ALJ's Findings</u>

      In February 2021 Plaintiff's husband completed a third-party form indicating his wife could not do many things around the house because it was difficult for her to stand for very long, could not go up or down stairs, used a bench to shower, sat on a stool while cooking (if she cooked), and used a scooter or cane at the store. AR 265-272. He also provided estimates about how much his wife could lift (10 to 15 pounds) and how far she could walk (75 feet with a lot of stopping). AR 270. Finally, he stated, "When we go out everything is planned out such as distances to and from the car, do we need the scooter or can she stand up or sit down because she cannot sit or stand for very long." AR 272.

      The ALJ made the following finding regarding third-party evidence:

1
2
3
4
5
6

I considered the Third-Party Function Report by the **claimant's husband** Brad Bodyfelt at Exhibit 10E indicating the claimant was uncomfortable sitting, standing, or walking for any period of time without pain. He indicated that he and the claimant were **unable to do as many activities because she was unable to walk, stand or sit for long periods**. However, the record shows **significant improvement** in symptoms post back surgery such that the **claimant was able to travel and babysit her granddaughter**. While I agree that the claimant has some physical restrictions due to her impairments, I find that, for the reasons discussed above, her limitations are not to the degree of disability. I have accommodated for her conditions in my residual functional capacity assessment[.]

AR 25 (emphasis added).

7
8

      2.  <u>Lay Witness Standard</u>

9
10
11

      The ALJ is not required to articulate how she considered lay witness evidence. *See*, 20 C.F.R. §§ 416.902c (public agency employees are nonmedical sources), 416.920c(d); *see*, *Fryer v. Kijakaz*i, Case No. 21-36004, 2022 WL 17958630, at *3 n.1 (9th Cir. Dec. 27, 2022) ("it is clear [ALJs] are no longer required to articulate [lay witness evidence] in their decisions").

12
13

      3.  <u>Analysis</u>

14
15
16

      Plaintiff argues the ALJ erred by rejecting her husband's lay witness statement because the above reasons were not "germane". Dkt. 12 at 15-16. Her improvement post back surgery does not account for the two years prior, and Plaintiff further insists her post-surgery improvement "was limited and temporary". *Id*. at 15.

17
18
19
20
21

      Defendant responds that the Commissioner's revised regulations do not require ALJ's to articulate how they consider non-medical sources, whereas Plaintiff's argument relies on old regulations and case law. Dkt. 15 at 7-8. Defendant further contends that since Plaintiff's husband's "testimony was substantially the same as Plaintiff's own … discounted testimony", if any error had occurred it was harmless. *Id*. at 8.

22
23
24

      The Court concurs with Defendant that the ALJ was not required to articulate how he considered lay witness evidence. *See*, 20 C.F.R. §§ 416.902c (public agency employees are

1   nonmedical sources), 416.920c(d); *see*, *Fryer v. Kijakazi*, Case No. 21-36004, 2022 WL

2   17958630, at *3 n.1 (9th Cir. Dec. 27, 2022) ("it is clear [ALJs] are no longer required to

3   articulate [lay witness evidence] in their decisions"). However, because the Court finds, above,

4   that the ALJ erred by failing to address Plaintiff's testimony regarding her functional limitations

5   prior to her December 2019 back surgery, the Court further finds that the ALJ's rejection of

6   Plaintiff's husband's testimony regarding this same period was not harmless as it is not clear

7   from the record that rejecting his testimony was inconsequential to the ultimately disability

8   determination. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008)(court will not reverse

9   the ALJ if it is clear from the record the ALJ's error was inconsequential to the ultimately non-

10  disability determination). Accordingly, on remand the ALJ must reevaluate the lay witness

11  testimony as it relates to the period of November 2017 to December 2019.

12  **C.  Medical Evidence**

13           Plaintiff argues the ALJ erred in discrediting the opinion of Kevin Herron, M.D..

14      1.  The ALJ's Findings

15           In August 2020, Kevin Herron, M.D. (Herron) completed a "medical source statement"

16  on which he opined that Plaintiff could sit for up to two hours at a time, stand for ten minutes at a

17  time, and walk for ten minutes at a time, for a maximum of five sitting hours per workday, two

18  standing hours per workday, and one walking hour per workday. AR 576-581. Herron further

19  opined that Plaintiff could "never" stoop, kneel, crouch, or perform other postural maneuvers.

20  AR 579. And Herron stated that Plaintiff could only go shopping with the use of a scooter, could

21  prepare simple meals while sitting on a stool, and could only perform activities for a "limited

22  time" before resting. AR 581.

23

24

1    The ALJ found Herron's opinion was "somewhat persuasive" but his opined limitations

2  were "overstated and not completely supported by [his] corresponding exam" and "not consistent

3  with the longitudinal record." AR 24. The ALJ explained:

4       … Herron indicated [Plaintiff] continued to experience limited functioning. But he
        also noted the claimant had dramatic decrease in pain post-surgery. The claimant's
5       **decrease in pain post-surgery, allowed her to vacation in Mexico. She has also
        traveled to Arizona. She also babysat her granddaughter for a week.** These
6       factors are inconsistent with "limited functioning" as indicated by Dr. Herron.
        Furthermore, she consistently demonstrates a normal gait and station, full strength
7       of the upper and lower extremities, and intact sensation.

8  AR 24 (emphasis added).

9    2.  <u>Medical Evidence Standard</u>

10    Under the revised regulations, ALJs "will not defer or give any specific evidentiary

11  weight, including controlling weight, to any medical opinion(s) or prior administrative medical

12  finding(s) …". 20 C.F.R. §§ 416.1520c(1) and 416.920c(a). Instead, ALJs must consider every

13  medical opinion or prior administrative medical findings in the record and evaluate each

14  opinion's persuasiveness using a list of factors listed. *See*, 20 C.F.R. §§ 416.1520(c)(a) and

15  416.920c(a). The two most important factors are the opinion's "supportability" and

16  "consistency." *Id*. ALJs must explain "how [they] considered the supportability and consistency

17  factors for a medical source's medical opinions or prior administrative medical findings in [their]

18  . . . decision." 20 C.F.R. §§ 416.1520c(b)(2) and 416.920c(b)(2).

19    "Supportability means the extent to which a medical source supports the medical opinion

20  by explaining the 'relevant … objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785,

21  791-2 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520(c)(c)(1)); *see also*, 20 C.F.R. § 416.920c(c)(1).

22  "Consistency means the extent to which a medical opinion is 'consistent … with the evidence

23  from other medical sources and nonmedical sources in the claim.'" *Id*. at 792 (citing 20 C.F.R. §

24  404.1520(c)(c)(2)); *see also*, 20 C.F.R. § 416.920c(c)(2).

3.  <u>Analysis</u>

Plaintiff argues the ALJ "provided poorly supported reasons to reject [] Herron's opinion." Dkt. 12 at 18. With regard to the ALJ's finding that Herron's opinion was not supported by his corresponding exam, Plaintiff argues that since Herron was her primary care provider he "was not required to perform a detailed orthopedic examination at every appointment" and the ALJ "should have also considered [] Herron's opinion in light of the underlying treatment notes" from Plaintiff's past appointments with Herron. *Id*.

As for consistency, Plaintiff contends that while she may have traveled and camped during the relevant period these activities "aggravated her back pain", and babysitting her granddaughter was not inconsistent with Herron's opinion as "the record did not provide any details" about her level of engagement with that effort. *Id*.

Finally, Plaintiff argues the ALJ erroneously focused on Plaintiff's post-December 2019 surgery, yet "there was a full two years between Plaintiff's amended alleged onset date in November 2017 and her December 2019 operation" so even assuming, for the sake of argument, that the ALJ's rejection of Herron's opinion is legally sufficient from December 2019 onward, "the ALJ did not provide any reasons for rejecting this opinion with respect to the first two years of the relevant period." *Id*. at 14.

Defendant responds that the ALJ's rejection of Herron's opinion is based on substantial evidence demonstrating a lack of supportability—as Plaintiff dramatically improved following her December 2019 surgery, which Herron noted in his August 2020 opinion (AR 566-567, 577, 699)—and lack of consistency with the record as a whole, reflecting a dramatic decrease in pain post-surgery such that Plaintiff could travel (AR 707) babysit (AR 833), and camp (AR 703). Dkt. 15 at 5-7. Defendant argues it is "unreasonable to believe a person who could only sit for two hours at a time could handle a trip to Mexico or Arizona, whether by plane or car." *Id*. at 7.

1    First, the Court find's Herron's opinion only applies to the period of August 2020

2  onward, as Herron rendered his opinion approximately nine months after Plaintiff's back surgery

3  and he did not opine regarding her pre-surgery functionality.

4    Second, there is no merit to Plaintiff's contention that the ALJ was required to comb

5  through the record to find support for Herron's opinion in past treatment notes. "Supportability

6  means the extent to which a medical source supports the medical opinion by explaining the

7  'relevant … objective medical evidence.'" *Woods*, 32 F.4th 791-2. The Court finds the ALJ

8  reasonably concluded that Herron's opinion lacked supportability because he did not identify the

9  medical or clinical findings (such as physical examination, x-rays, or laboratory test results) that

10  supported his assessment, as the medical source statement form asked him to do. *See*, AR 576.

11    Finally, for the same reasons the Court found the ALJ reasonably discredited Plaintiff's

12  testimony regarding her post-back surgery functionality, the Court finds the ALJ reasonably

13  concluded that Herron's opinion was inconsistent with the medical record and record of

14  Plaintiff's activities following her December 2019 surgery.

15    In sum, the Court finds no merit to Plaintiff's objections regarding the ALJ's treatment of

16  Herron.

17                                    **V. CONCLUSION**

18    For the foregoing reasons, the Court REVERSES and REMANDS the decision pursuant

19  to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this

20  Order.

21    Dated this 13th day of July, 2023.

22

23  _____

24                                    David W. Christel
                                    United States Magistrate Judge

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION DENYING BENEFITS
- 13